IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINA CONSULTING GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 10 C 4825 |
| ) | |
| RUBBERMAID COMMERCIAL ) | Suzanne B. Conlon, Judge |
| PRODUCTS, LLC *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

In this diversity case, China Consulting Group, LLC, sues Rubbermaid Commercial Products, LLC, ("Rubbermaid") and Newell Rubbermaid, Inc., ("Newell") for breach of contract and unjust enrichment stemming from a sale of a waste receptacle business to Rubbermaid, a subsidiary of Newell. The defendants move to dismiss, arguing the written contract unambiguously establishes that no breach occurred, the written contract forecloses recovery on an unjust enrichment theory, and Newell cannot be liable because it was not a party to the contract.

### I. Background

The following facts are taken from the amended complaint, which does not include a copy of the contract. In 2000, China Consulting Group and another company (not a party here) sold a waste receptacle business to Rubbermaid. Am. Compl. ¶ 7. At closing, Rubbermaid paid China Consulting Group approximately $1.4 million, and the written contract provided for continuing royalty payments (up to an aggregate $1.5 million) to be made quarterly based on the amount of specified royalty goods Rubbermaid sold the previous quarter. *Id.* at ¶¶ 8-9.

China Consulting Group claims Rubbermaid triggered a contract provision requiring Rubbermaid to pay unpaid royalties of approximately $1 million. Am. Compl. ¶¶ 13-18. The contract requires Rubbermaid to notify China Consulting Group within ten days and pay within twenty days the outstanding royalty payments if Rubbermaid decides either to stop buying the royalty goods or to reduce by 50% the total quantity of the royalty goods purchased in a calendar year. *Id.* at ¶ 13. China Consulting Group alleges both conditions have occurred: no royalty goods were sold in the first quarter of 2010, and Rubbermaid bought a competing business and is marketing those products instead of China Consulting Group's products. *Id.* at ¶¶ 14, 17. In addition, China Consulting Group alleges Rubbermaid breached the contract by not giving the contractually required notice of its decision to stop purchasing the goods and by not providing access to Rubbermaid's books and records as provided by the contract. *Id.* at ¶¶ 15-16. Count I alleges breach of contract, and Count II alleges unjust enrichment.

## II. Analysis

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court generally accepts as true all well-pleaded facts in the amended complaint. *Reger Development, LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir.), *cert. denied*, 130 S. Ct. 3507 (2010). Defendants, however, include a copy of the contact with their motion to dismiss. *See* Defs.'s Mem. in Supp. of Mot. To Dismiss, Ex. 1 ("Contract"). Because the contract is referenced in and central to the amended complaint, the court may consider it on a motion to dismiss. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Therefore, the unambiguous terms of the contract control over inconsistent allegations in the amended complaint. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). Dismissal is proper under Rule

12(b)(6) if, after drawing all inferences in plaintiff's favor, the amended complaint fails to include enough facts to state a claim that is plausible on its face. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009). The contract specifies that Illinois law governs the dispute. Contract § 6.5.

## A. Defendant Newell

Defendants argue Newell cannot be liable because it is not a party to the contract and China Consulting Group has not alleged a valid theory of liability against Newell. China Consulting Group argues dismissal of Newell would be premature because the amended complaint alleges Newell has been responsible for performance under the contract. China Consulting Group asserts discovery would uncover the proper corporate entity within the Newell group to sue.

The contract confirms the signatories to the contract are only Rubbermaid, China Consulting Group, and Intrex, LLC (not a party to the litigation). Contract, pp. 1, 13. Rubbermaid, as an LLC organized under Delaware law, is a legal entity that can sue and be sued. DEL. CODE ANN. tit. 18, § 106. Rubbermaid's sole member is Rubbermaid Incorporated (an Ohio corporation and wholly-owned subsidiary of Newell). Dkt. Nos. 20 (Defendants' Notification of Affiliates), 30 (Amended Response to Show Cause). Illinois law looks to the law of the state in which an LLC is organized to determine whether a corporate veil may be pierced. *Westmeyer v. Flynn*, 889 N.E.2d 671, 676 (Ill. App. Ct. 2008). Rubbermaid's LLC form protects Rubbermaid's member, Rubbermaid Incorporated, from liability for the LLC's obligations, just as the corporate form of Rubbermaid Incorporated protects its sole shareholder, Newell, from liability for Rubbermaid Incorporated's obligations. *Id.* at 676-77. A member of an LLC cannot

3

be held liable under Delaware law unless the plaintiff shows fraud, undercapitalization, or the member is the alter ego of the LLC. *Id.* at 676-78 (citing Delaware law).

To reach Newell, China Consulting Group would have to pierce the veil of Rubbermaid to reach Rubbermaid Incorporated, then pierce the veil of Rubbermaid Incorporated to reach Newell. China Consulting Group alleges no theory under which Newell could be liable. The amended complaint states only that "[o]n information and belief, Newell Rubbermaid is liable for performance under the contract and contract damages." Am. Compl. § 4. The contract states otherwise. The contract is binding on each party and does not give any other entity rights, remedies, or other benefits. Contract §§ 6.3, 6.10. Rubbermaid may assign the contract to an affiliate. *Id.* at § 6.3. But if it does so without notice to China Counseling Group, Rubbermaid remains liable under the contract. *Id.* Newell's status as a parent corporation alone is insufficient for liability under the contract. *See Bank One, Okl. N.A. v. Trammell Crow Servs., Inc.*, No. 03 C 3624, 2003 WL 23019173, at *2 (N.D. Ill. 2003) (Lefkow, J.) (dismissing contract claims against parent company that was not a party to the contract). Therefore, Newell is dismissed from the lawsuit.

## B. Count I—Breach of Contract

Defendants argue China Consulting Group misinterprets how two provisions of the contract, § 1.4(b) (Royalty Payments) and § 4.6 (Acceleration of Royalty Payments), interact. Defendants argue § 1.4(b) of the contract does not impose an obligation on Rubbermaid to pay a total of $1.5 million in royalties; rather, the section requires Rubbermaid to pay royalties only on the royalty goods it sells, up to a $1.5 million aggregate limit. In other words, they assert the $1.5 million figure is a cap on the amount of royalties China Consulting Group might possibly

receive under the contract, not a guaranteed amount. This misunderstanding, they contend, carries over to the meaning of § 4.6. They agree with China Consulting Group that § 4.6 requires payment of outstanding royalties upon one of the specified conditions but disagree about the amount of royalties due. They assert that under § 1.4(b), royalty payments become "due" only after a royalty good is sold. They conclude that royalty payments "due hereunder" upon the occurrence of a condition in § 4.6 means any unpaid royalty payments calculated from past sales of royalty goods. Because China Consulting Group alleges no royalty goods were sold in the first quarter of 2010, no payment is due. The "acceleration" of the payment, they argue, is that the payment is due within 20 days rather than at the end of the quarter.

The clear and unambiguous language of a contract best expresses the parties' intent. *First Bank and Trust Co. of Ill. v. Vill. of Orland Hills*, 787 N.E.2d 300, 304-05 (Ill. App. Ct. 2003). A court gives the common and generally accepted meaning to a term not specifically defined in the contract. *Dean Mgmt., Inc. v. TBS Construction, Inc.*, 790 N.E.2d 934, 939 (Ill. App. Ct. 2003). A contract term is ambiguous when it may reasonably be interpreted in more than one way. *Covinsky v. Hannah Marine Corp.*, 903 N.E.2d 422, 427 (Ill. App. Ct.), *appeal denied*, 919 N.E.2d 351 (Ill. 2009). Terms are read in the context of the agreement as a whole, and courts will not interpret the contract in a way that nullifies a provision. *Regency Commercial Assoc., LLC v. Lopax, Inc.*, 869 N.E.2d 310, 316 (Ill. App. Ct. 2007).

The main issue to be resolved is whether § 1.4(b) guarantees royalty payment of $1.5 million or merely sets a cap at $1.5 million. The relevant portion § 1.4(b) reads:

> (b) <u>Royalty Payments</u>. Buyer shall pay Seller, on a quarterly basis commencing on the Closing Date, royalty payments equal to five percent (5%) of Buyer's current cost (FOB China Facility) of any finished goods used in the Business and produced at the Shanghai Xing Te Hao Corporation Facility (the "<u>China</u>

5

> Facility"). Such finished goods are herein referred to as the "Royalty Goods", and such royalty payments are herein referred to as the "Royalty Payments". The amount of the Royalty Payments due each calendar quarter shall be determined based on the amount of such Royalty Goods sold commercially (excluding inter-company sales by Buyer to Buyer's affiliate) by Buyer in the applicable quarter, less returns actually credited on Buyer's books and records. . . . The Royalty Payments and obligations of Buyer to make Royalty Payments hereunder shall terminate at such time as the aggregate Royalty Payments paid hereunder equal $1,500,000, the duration of such period to be known as the "Royalty Period." . . .

Defendants contend this section defines the royalty payments "due" as those based on already sold royalty goods and that it does not guarantee any amount. China Consulting Group contends § 1.4(b) establishes that the royalty period will continue until the payments reach $1.5 million. Therefore, it contends the § 4.6 events trigger the full royalty payment. Section 4.6 reads:

> **Section 4.6. Acceleration of Royalty Payments.** In the event Buyer decides in its sole discretion to either (a) cease purchasing the Royalty Goods from the China Facility and use an alternate source for such finished goods, or (b) reduce the total quantity of Royalty Goods purchased by Buyer from the China Facility in any calendar year by 50% of the previous calendar year's purchases of Royalty Goods by Buyer, Buyer agrees to provide Seller written notice within ten business days of the occurrence of either event described in (a) or (b) above, and Buyer agrees to pay Seller within 20 business days of such event's occurrence the remaining Royalty Payments due hereunder, and upon which final Royalty Payment all obligations of Buyer to make any Royalty Payments hereunder shall terminate.

The contract is ambiguous. The contract does not explicitly state that China Consulting Group is guaranteed $1.5 million in royalties. Nor does it explicitly state that the royalty period may end before full payment of $1.5 million in royalties. Defendants' argument that the royalty payments "due hereunder" in § 4.6 refers to how § 1.4(b) defines payments "due each calendar quarter" is unavailing. Section 1.4(b) does not explicitly state that royalty payment can become due only upon the sale of a royalty good. Rather, that section could be read to set the amount of payments China Consulting Group could expect each quarter, not over the entire royalty period.

Accordingly, defendants have not established that Count I should be dismissed as a matter of law.

## C. Count II—Unjust Enrichment

Defendants argue China Consulting Group failed to state a claim for unjust enrichment because that theory is unavailable under Illinois law when an express contract governs the parties' relationship. *See People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." (internal quotation marks omitted)). China Consulting Group counters that dismissal would be premature because Illinois law permits unjust enrichment to be pled along with breach of contract as an alternative theory of recovery. *See Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 946 (Ill. App. Ct. 2010) ("[W]here a party pleads breach of contract, he also can plead unjust enrichment in the alternative.").

Both parties cite correct statements of law. Unjust enrichment exists when a defendant receives a benefit that is to the plaintiff's detriment and the defendant's retention of that benefit would be unjust. *Martis v. Pekin Mem'l Hosp., Inc.*, 917 N.E.2d 598, 606 (Ill. App. Ct. 2009), *appeal denied*, 924 N.E.2d 456 (Ill. 2010). In general, unjust enrichment is unavailable under Illinois law when a specific contract governs the parties' relationship. *Prignano v. Prignano*, No. 02-09-0439, 2010 WL 3180093, at *13 (Ill. App. Ct. 2010). A plaintiff, however, may plead both theories if unjust enrichment is based on a tort theory, *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998), or when pled in the alternative, *see* FED. R. CIV. P. 8(d) (allowing alternative and inconsistent claims); *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000) (Bucklo, Mag. J.).

7

China Consulting Group does not allege that a tort underlies its claim of unjust enrichment. Nor is unjust enrichment properly pled in the alternative. The unjust enrichment claim incorporates the allegations involving the existence of a contract, which is inconsistent with unjust enrichment. Am. Compl. ¶ 24; *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2004 WL 3363844, at *16 (N.D. Ill. 2004) (Moran, J.). China Consulting Group claims damages in the amount allegedly due under the contract, not in the amount the defendants were allegedly enriched unjustly. Am. Compl. ¶ 26; *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007) (Moran, J.).

### III. Conclusion

For the foregoing reasons, Newell is dismissed from this case, and Count II of the amended complaint is dismissed without prejudice. The motion to dismiss Count I is denied.

ENTER:

October 15, 2010

Suzanne B. Conlon
United States District Judge