**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHINA CONSULTING GROUP, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 10 CV 4825 |
| | ) | |
| **RUBBERMAID COMMERCIAL PRODUCTS, LLC.,** | ) ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendant. | ) | December 2, 2010 |

**MEMORANDUM OPINION and ORDER**

Before the court is plaintiff China Consulting Group, LLC's ("CCG") motion to compel defendant Rubbermaid Commercial Products, LLC ("Rubbermaid") to permit the inspection of certain records. For the following reasons, the motion is granted in part and denied in part:

**Background**

In March 2000, CCG and Rubbermaid entered into an asset purchase and sale agreement. (R. 15, Attach. 1 ("Agreement").) Pursuant to the terms of the Agreement, Rubbermaid—as the buyer of certain assets related to CCG's business of designing, manufacturing, distributing, marketing and selling waste receptacles—agreed to pay royalties to CCG on a quarterly basis. Agreement § 1.4(b). Rubbermaid also agreed to maintain certain books and records for purposes of calculating the correct royalty amounts and to permit CCG to inspect these records once a year. (Id.)

The record suggests that the parties maintained a dispute-free contractual relationship for the last 10 years. However, in or about July 2010, CCG began to question Rubbermaid's compliance with the terms of the Agreement. (R. 40, Ex. 2.) The following month, on August 2, 2010, CCG filed a federal complaint against Rubbermaid for alleged breach of contract. (R. 1.) CCG amended its complaint two days later and claimed that Rubbermaid breached the Agreement by failing to comply with the inspection provision under § 1.4(b) and the accelerated payment provision under § 4.6. (R. 4 ¶¶ 12, 16.)

CCG claims that Rubbermaid agreed to make certain royalty payments until Rubbermaid has paid a total of $1.5 million in royalty and that Rubbermaid agreed to pay CCG the portion of the $1.5 million royalty not yet made in full within 20 days of taking certain actions. Sections 1.4(b) and 4.6 provide in relevant part that:

> Royalty Payments. Buyer shall pay Seller, on a quarterly basis commencing on the Closing Date, royalty payments equal to five percent (5%) of Buyer's current cost (FOB China Facility) of any finished goods used in the Business and produced at the Shanghai Xing Te Hao Corporation Facility (the "China Facility"). Such finished goods are herein referred to as the "Royalty Goods", and such royalty payments are herein referred to as the "Royalty Payments". The amount of the Royalty Payment due each calendar quarter shall be determined based on the amount of such Royalty Goods sold commercially (excluding inter-company sales by Buyer to Buyer's affiliate) by Buyer in the applicable quarter, less returns actually credited on Buyer's books and records. . . . The Royalty Payments and obligations of Buyer to make Royalty Payments hereunder shall terminate at such time as the aggregate Royalty Payments paid hereunder equal $1,500,000, the duration of such period to be known as the "Royalty Period." Buyer will maintain books and records during the Royalty Period in sufficient detail to enable the royalties payable to Seller hereunder to be determined. Seller will have the right to inspect such records once a year during the Royalty Period during normal business hours upon five days prior written notice to Buyer.

2

> Acceleration of Royalty Payments.  In the event Buyer decides in its sole discretion to either (a) cease purchasing the Royalty Goods from the China Facility and use an alternate source for such finished goods, or (b) reduce the total quantity of Royalty Goods purchased by Buyer from the China Facility in any calendar year by 50% of the previous calendar year's purchases of Royalty Goods by Buyer, Buyer agrees to provide Seller written notice within ten business days of the occurrence of either event described in (a) or (b) above, and Buyer agrees to pay Seller within 20 business days of such event's occurrence the remaining Royalty Payments due hereunder, and upon which final Royalty Payment all obligations of Buyer to make any Royalty Payments hereunder shall terminate.

On August 24, 2010, CCG served a set of requests for production of documents pursuant to Federal Rule of Civil Procedure 34(a).  (R. 40, Ex. 3 at 1.)  On September 27, 2010, Rubbermaid served its responses on CCG.  (Id.)  After the required meet-and-confer conference, CCG filed a motion to compel Rubbermaid to permit the inspection of documents responsive to its request numbers 1, 2, 3 and 5.  (R. 40 at 3.)  Rubbermaid opposes the motion and asserts that it has tendered all documents relevant to this action.

On November 23, 2010, the assigned District Judge referred CCG's motion to compel to this court for resolution.  In response to the referral order, CCG promptly re-noticed the motion to compel before this court and presented the motion on December 1, 2010.  At the motion hearing, the parties presented oral arguments in support of their respective positions.

**Analysis**

CCG's motion to compel is granted in part and denied in part as some of the documents CCG seeks in its request to produce fall within the scope of Rule 26(b).  Rule 34(a)(1) provides that a party may request, among other things, the production of documents

3

that constitute matters within the scope of Rule 26(b) and are in the possession, custody, or control of another party. According to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The party from whom the documents are requested "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed.R.Civ.P. 34(b)(2)(B). Under Rule 34, a party is permitted to seek an order compelling disclosure when the opposing party fails to allow inspection of the requested documents. Fed.R.Civ.P. 37(a)(3)(B)(iv). The court has broad discretion when reviewing a discovery dispute between parties and "should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). The value of the materials sought and the burden of providing the same should also be considered when ruling on motions to compel. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

**A. CCG's Requests 1 and 2**

Rubbermaid's objections to these two requests are sustained to the extent that the scope of the requests is too broad and these requests seek documents that are not relevant to the instant action. CCG requested "[a]ll documents for the past 10 years regarding purchase orders, receiving reports, bills of lading, and customs clearance documents for waste receptacles imported from China by Rubbermaid" and payment records for the past 10 years pertaining to waste receptacles Rubbermaid purchased "directly or indirectly" from 13 China

4

based companies, including Shanghai Xing Te Hao Corporation ("XTH"). (R. 40, Ex. 3.) Rubbermaid objected on the grounds that CCG is only entitled to those "documents sufficient to show the calculation and payment of royalties under the contract at issue" and produced for CCG's inspection document numbers RCP-1979 to RCP-6497. Rubbermaid represented in open court on December 1, 2010, that these records reflect Rubbermaid's purchase of XTH manufactured waste receptacle goods since the execution of the Agreement.

CCG's requests 1 and 2 are too broad in scope because the Agreement spells out that the 5% royalty payment calculation is based on Rubbermaid's cost of finished goods produced by a specific vendor, XTH, not by any and all vendors in China. Also, whether CCG is entitled to an accelerated royalty payment is based on whether Rubbermaid stopped purchasing goods specifically from XTH or reduced the total quantity of goods purchased from XTH in any calendar year by 50% of the previous calendar year's purchases. Both the royalty payment calculation and the answer to whether Rubbermaid stopped buying goods or reduced its purchase by half may be determined by the records Rubbermaid has already produced.

CCG did not explain in its motion to compel why it requires the inspection of a broader scope of records in order to prosecute this breach of contract case. CCG asserted in its reply brief in support of its motion to compel that "[r]ecords of all Rubbermaid waste receptacle purchases from China should be provided." (R. 43 at 2.) However, CCG again

5

failed to explain the nexus between the records it sought in its request to produce and the issues in this case.

CCG argued on December 1, 2010, that it must be allowed to inspect all purchase records showing Rubbermaid's transactions with any and all vendors located in China because it cannot trust the documents already produced by Rubbermaid. When asked for its factual basis for this assertion, CCG responded that the purchase records produced by Rubbermaid contain records showing purchases of waste receptacles from vendors other than XTH. But this is not an adequate basis for CCG to be suspicious of Rubbermaid's production of documents responsive to its request. In fact, in order for Rubbermaid to have produced all relevant and responsive records to CCG's request, the production of purchase records must include 10-years worth of records showing the cost of finished goods *produced by XTH* even if Rubbermaid purchased such goods from vendors other than XTH. The relevant records are determined by the specific finished goods purchased, not the identity of the vendor. This means that if Rubbermaid purchased waste receptacles manufactured by XTH but sold by a different vendor in China, Rubbermaid must include such records in its response to the request or permit the inspection of those records. As such, the fact that the purchase records produced by Rubbermaid reflect vendors/manufacturers different from XTH does not constitute a reasonable basis to compel Rubbermaid to open all of its transaction files for a general inspection.

Moreover, Rubbermaid explained in court that it has not used other vendors to purchase XTH goods other than from XTH. The purchase records reflect different vendor names because Rubbermaid used vendors other than XTH to have the goods shipped to the United States and because XTH, at some time after the execution of the Agreement, changed its business name several times. CCG did not offer any information to rebut Rubbermaid's representation. Rubbermaid also offered to provide an affidavit to address CCG's concerns about the different vendor names reflected in the purchase records.

**B. Request 3**

Rubbermaid's objections are sustained in part to the extent that the scope of CCG's request 3 is too broad and sought documents that are not relevant. According to the Agreement, the amount of the quarterly royalty payments is to be determined by the amount of XTH waste receptacles Rubbermaid sold commercially during the applicable time period with certain deductions. There is no nexus between the royalty amount CCG is entitled to receive under the Agreement and the records reflecting Rubbermaid's sale of *all* waste receptacles in its inventory.

But, Rubbermaid's objections are overruled in part to the extent that CCG is entitled to records reflecting Rubbermaid's sale of XTH goods for the past 10 years. Rubbermaid argues that because it calculated the royalty payments made to CCG based on the cost of XTH goods *purchased,* these payments must be either equal to or higher than the royalty payment amounts calculated based on the cost of XTH goods *sold*. Under Rubbermaid's

7

theory, the sales records are not necessary for purposes of determining whether Rubbermaid shortchanged CCG on its royalty payments. However, the parties do not dispute that CCG's royalty payments are in fact calculated based on the quarterly sales data and not purchase data. Based on the plain reading of Section 1.4(b), CCG is entitled to inspect the sales records and its request to inspect them is reasonable.

### C. Request 5

The motion to compel is denied as to this request based on the court's ruling on requests 1, 2 and 3. Based on this ruling, Rubbermaid is required to either produce or permit CCG to inspect 10-years worth of Rubbermaid's purchase and sales records pertaining to XTH waste receptacles. These records are more than adequate to determine whether Rubbermaid has been paying CCG the correct royalty payments and whether CCG is entitled to an accelerated payment of outstanding royalty under the terms of the Agreement. Moreover, pursuant to the terms of the Agreement, these are the records CCG is entitled to inspect.

**Conclusion**

For the foregoing reasons, the motion is granted in part and denied in part. To the extent that the court has granted CCG's motion to compel, Rubbermaid is ordered to either produce the documents ordered herein or grant CCG access to inspect those documents at Rubbermaid's facilities by no later than December 17, 2010.[1] Also, because Rubbermaid has offered to provide an affidavit to supplement its document production response and because the court considered this offer in ruling on this motion, Rubbermaid is ordered to provide an affidavit, by December 17, 2010, explaining the various vendor names reflected in its purchase records already produced to CCG.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge

---

[1] The parties must be mindful of the discovery cutoff date of February 11, 2011.